IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BILLIE DEAN SMITH,<br><br>                Petitioner,<br><br>    vs.<br><br>ARNALDO HERNANDEZ,<br>Superintendent, Spring Creek<br>Correctional Center,[1] | No. 3:20-cv-00033-JKS<br><br>ORDER<br>[Re: Motions at Docket Nos. 12, 13]<br>and<br>MEMORANDUM DECISION |

Billy Dean Smith, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Smith is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Spring Creek Correctional Center. Respondent has answered, and Smith has replied. Also pending before Court is Smith's renewal of his request for the appointment of counsel, Docket No. 13, and his motion for an oral hearing on his Petition, Docket No. 12.

## I. BACKGROUND/PRIOR PROCEEDINGS

Smith was charged in 1998 with the first-degree murders of Harold Enzler and Nancy Bellamy, along with three counts of tampering with evidence, after he was arrested for

---

[1] Arnaldo Hernandez is substituted for Marianna Miranda as Superintendent, Spring Creek Correctional Center. FED. R. CIV. P. 25(d).

-1-

possession of cocaine. In connection with that arrest, Smith was interviewed several times and eventually confessed to the murders. He later moved to suppress the statements, which was denied, and proceeded to a jury trial. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Smith and his suppression motion:

> Harold Enzler and Nancy Bellamy disappeared on March 27, 1994. At that time, Enzler was estranged from his wife Mimi, and she was romantically involved with Smith. Enzler and Mimi were also having a child-custody dispute, which was so bitter that Smith pulled a gun on Enzler during an argument. Accordingly, Smith was initially considered a suspect when Enzler and Bellamy disappeared. But at that time, the authorities did not have sufficient evidence to charge Smith with any crime.
>
> About three years after Enzler and Bellamy disappeared, police at the Anchorage International Airport seized a bag of Smith's that contained a large amount of cocaine. Smith was arrested in Soldotna for the resulting drug charges. A couple of weeks later, Alaska State Trooper Daniel Shepard escorted Smith by plane from Kenai to Anchorage. During that time, Smith told Shepard that he had information he wanted to share about drug trafficking and other criminal activity. After dropping Smith off at the Cook Inlet Pretrial Facility, Trooper Shepard contacted Detective Pam Perrenoud of the Anchorage Police Department about Smith's offer.
>
> On August 27, 1997, Detective Perrenoud and Alaska State Trooper Sergeant Walter Kenny contacted Smith about the drug-trafficking information. Smith was unable to give the officers any helpful details but mentioned having information about pending investigations in the Kenai area-including the disappearance of Enzler and Bellamy, as well as unrelated information about the disappearance of Loreese Hennagin. After this interview, Sergeant Kenny contacted Investigator Ronald Belden of the Alaska State Troopers to tell him that Smith had information about these ongoing investigations.
>
> Investigator Belden had been assigned to the case involving the disappearance of Enzler and Bellamy. Kenai Police Sergeant Charles Kopp was assigned to the separate investigation concerning the disappearance of Loreese Hennagin. On August 29, 1997, Sergeant Kopp, Investigator Belden, and Trooper Charles Bartolini traveled to Anchorage to interview Smith about the Kenai investigations.
>
> During this interview, Smith stated that a confederate of his, Bruce Brown, had called Enzler to arrange a drug transaction with him on Marathon Road. Smith said that he had instructed Brown to drive Enzler and Bellamy to the road in Enzler's truck. Prior to this event, Smith drove to the road with Dennis Johnson and parked his car with its hood open so that it would appear that the car had broken down. Brown later stopped the truck with Enzler and Bellamy inside; Smith then reached into the vehicle and shot the couple. Smith admitted that the group then dismantled Enzler's vehicle, discarded Smith's weapon in a nearby lake, and disposed of the bodies in Cook Inlet.
>
> Smith made detailed statements during subsequent interviews on September 4 and October 22. He was also transported to Soldotna on October 24 to help Investigator Belden find evidence at the crime scene.
>
> On May 1, 1998, a Kenai grand jury indicted Smith, Johnson, and Brown for the murders of Harold Enzler and Nancy Bellamy, as well as for multiple counts of evidence tampering. Before trial, Smith sought to suppress his August 29, 1997, confession and subsequent statements, arguing that his confession was involuntary and that the police had violated his Fifth Amendment right to counsel. After an extended evidentiary

> hearing, Superior Court Judge Jonathan H. Link denied Smith's motion to suppress, finding that Smith fabricated his allegations that the authorities had promised him a lenient agreement and ruling that Smith did not invoke his right to counsel.

*Smith v. State*, No. A-8735, 2009 WL 792800, at *1-2 (Alaska Ct. App. Mar. 25, 2009).

At the conclusion of a jury trial, the jury convicted Smith as charged of two counts of first-degree murder and three counts of tampering with physical evidence. The Alaska Superior Court sentenced Smith to an aggregate term of 129 years' imprisonment with 30 years suspended.

Through counsel, Smith appealed his conviction, arguing that he confessed only because the police agreed to give him a job as an undercover drug informant, which would guarantee a lenient sentence and a full pardon, and that the police continued to question him after he had requested an attorney. The Court of Appeals unanimously affirmed the judgment against Smith in a reasoned, unpublished opinion issued on March 25, 2009. *Smith*, 2009 WL 792800, at *5. In so deciding, the appellate concluded that the record supported the trial judge's finding that the police did not make the alleged agreement, and that Smith voluntarily waived his right to counsel. *Id.* Smith filed a petition for hearing in the Alaska Supreme Court, which was denied without comment on September 21, 2009.

Smith then filed a *pro se* application for post-conviction relief. After he requested and was appointed counsel, Smith filed an amended application that claimed that he received the ineffective assistance of trial counsel. According to Smith, his trial counsel should have moved for reconsideration of the trial court's factual finding that the troopers had not accepted Smith's offer to work as an informant in exchange for leniency, based on statements Investigator Belden made at the evidentiary hearing on Smith's suppression motion and at trial. The superior court denied post-conviction relief in a reasoned, unpublished opinion issued on April 15, 2016. Smith appealed the denial to the Alaska Court of Appeals, and the appellate court affirmed the dismissal of Smith's post-conviction relief application by summary disposition issued on July

17, 2019. The Alaska Supreme Court summarily denied Smith's petition for hearing on November 27, 2019.

Smith timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated February 11, 2020. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Smith argues, as he did on direct appeal and by post-conviction relief application in the state courts, that: 1) his confession was coerced; 2) he was deprived of his privilege against self-incrimination; and 3) he received the ineffective assistance of trial counsel.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

A. Merits

    1. *Coerced Confession* (Ground 1)

Smith first argues that his conviction was obtained by the use of a coerced confession. The Alaska Court of Appeals considered and rejected this claim on direct appeal as follows:

> To decide whether a confession was voluntary, a reviewing court must ascertain whether the confession was a "product of a free will or was the product of a mind overborne by coercion."[FN3] To make this determination, "the totality of circumstances surrounding the confession must be considered."[FN4] When evaluating the voluntariness of a confession, a reviewing court should review the trial court's factual findings for clear error, independently determine the suspect's mental state, and then assess the legal significance of that mental state by examining the totality of the circumstances.[FN5]
>
> > FN3. *Beavers v. State*, 998 P.2d 1040, 1044 (Alaska 2000) (quoting *Sovalik v. State*, 612 P.2d 1003, 1006 (Alaska 1980)).
> >
> > FN4. *Id.* (quoting *Sovalik*, 612 P.2d at 1006).
> >
> > FN5. *See State v. Garrison*, 128 P.3d 741, 748 (Alaska App. 2006).
>
> Smith argues that Sergeant Kenny offered Smith a job as an informant, including an agreement that Smith would receive a full pardon after serving 5 years' imprisonment. Essentially, Smith claims to have confessed to murdering Enzler and Bellamy to "establish his credibility" so that he could serve as an informant.
>
> Judge Link made the following general findings regarding the circumstances of the confession:
>
> > Smith was capable of understanding the implications of his acts and his waiver of his *Miranda* rights. He was 37 years old at the time of his arrest on drug charges, and he had prior experience with the criminal justice system. He had been interviewed in 1994 in connection with the Enzler and Bellamy disappearances. He is intelligent, streetwise and there is no evidence of mental incapacity today or at the time of the interviews. Smith's medical records do not indicate that Smith was ill or was undergoing heroin withdrawal . . . . Smith's interviews were not unduly long, and officers did not deprive Smith or subject him to physical discomfort. The interviews themselves were non-confrontational. Contrary to Smith's claims, he was not in a weakened state. He was treated respectfully and gently. The interview process was initiated and fostered by Smith himself.
>
> Judge Link also made the following specific findings related to Smith's testimony that he had received an agreement to act as an undercover informant:
>
> > [N]o agent of the State ever offered Smith a deal to provide information to the State. No agent of the State ever offered Smith leniency or any other inducement to encourage him to give interviews or statements. Specifically, Smith's statements regarding a deal . . . to the effect that he would serve five

-6-

Case 3:20-cv-00033-JKS Document 17 Filed 11/03/20 Page 6 of 19

years and then receive a full pardon, or that he would work as an informant . . . is fabrication on Smith's part. Smith . . . offered to provide information against [several individuals], but these offers were never accepted by the State.

Furthermore, Judge Link explicitly found that the officers' testimony was more credible than Smith's testimony:

The testimony of Kenny and Perrenoud was focused and unambiguous. The focal point was Smith's voluntary desire to speak with law enforcement about other crimes he purportedly had knowledge of. The testimony of Belden, Bartolini and Kopp confirms this. Smith's assertion that this willingness was the product of an agreement that he would "do five years and receive a full pardon" is beyond the pale. It contradicts all other testimony and a good portion of Smith's remaining statements.

Based on this evaluation, Judge Link concluded that Smith's testimony regarding these matters was not credible and that the officers' testimony was credible.

This court will defer to the trial judge's findings of fact and overturn them only if they are clearly erroneous.[FN6] A finding of fact is clearly erroneous when the reviewing court has a definite and firm conviction that the trial judge has made a mistake.[FN7] We are especially deferential to the trial court's decisions on credibility "because of its ability to observe the witnesses' demeanor."[FN8]

> FN6. *See Aningayou v. State*, 949 P.2d 963, 966 (Alaska App. 1997); *see also Miller v. State*, 18 P.3d 696, 699 (Alaska App. 2001).
>
> FN7. *See Troyer v. State*, 614 P.2d 313, 318 n.11 (Alaska 1980); *Geczy v. LaChappelle*, 636 P.2d 604, 606 n.6 (Alaska 1981); *Noyakuk v. State*, 127 P.3d 856, 864 n. 7 (Alaska App. 2006).
>
> FN8. *Troyer*, 614 P.2d at 318 (citing *Culombe v. Connecticut*, 367 U.S. 568, 603, 81 S. Ct. 1860, 1879, 6 L. Ed. 2d 1037 (1961)).

Judge Link was required to assess the conflicting testimony of Smith and the investigating officers to determine whether they had made an agreement that included lenient treatment for Smith. The testimony from Perrenoud, Kenny, Kopp, Belden, and Bartolini supported Judge Link's finding that no agent of the State ever promised Smith any such agreement. This court must therefore defer to Judge Link's evaluation of the witnesses' credibility. Consequently, this court must sustain Judge Link's findings that Smith did not confess in response to an agreement.

Smith also argues that Judge Link's ruling was clearly erroneous because he failed to consider the testimony of Dr. Richard Ofshe. "[W]here there is a direct conflict in testimony, it is crucial that the trial court summarize the evidence, identify factual conflicts and resolve them on the record."[FN9]

> FN9. *Burks v. State*, 706 P.2d 1190, 1191 (Alaska App. 1985) (construing Alaska R. Crim. P. 12(d)).

Dr. Ofshe testified that the interview transcripts suggested that Smith appeared to be motivated to work as an undercover agent. He opined that several aspects of the transcripts did not make sense without there having been some prior agreement between Smith and the officers. Nevertheless, Dr. Ofshe did not raise a direct conflict in the

-7-

> evidence about what happened between Smith and the investigating officers. He merely offered his opinion about how to resolve a latent conflict.
>
> A trial court "ordinarily has no obligation to accept expert testimony when it finds other evidence more persuasive."[FN10] Thus, Judge Link was free to make an independent evaluation of the facts on which Dr. Ofshe relied.[FN11] Based on the same evidence evaluated by Dr. Ofshe, Judge Link found that Smith was not credible and that the purported off-the-record deal was fabricated. In view of Judge Link's detailed findings, his failure to mention Dr. Ofshe by name was not clearly erroneous.
>
>> FN10. *Evans v. Evans*, 869 P.2d 478, 480 (Alaska 1994).
>>
>> FN11. *Cf. Bowker v. State*, 373 P.2d 500, 501-02 (Alaska 1962) ("[T]he jury should be free to make an independent analysis of the facts on which the expert's opinion rests . . . .").

*Smith*, 2009 WL 792800, at *2-4.

As an initial matter, Respondent urges the Court to dismiss this claim as unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. To satisfy the "fairly present" requirement, the petitioner must present his or her federal claim to "each appropriate court (including a state supreme court with powers of discretionary review)" so that the each court is alerted to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). In Alaska, this means that claims must first be presented to the Alaska Superior Court. If the petitioner disagrees with that result, the claim should be raised to the Alaska Court of Appeals, and if he disagrees with that result, the claim should be raised in a petition for hearing to the Alaska Supreme Court. In this case, the record indicates that Smith did not argue to the Alaska state courts the federal basis of his coerced confession claim. Consequently, the claim is unexhausted and subject to dismissal. *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

In any event, Smith is not entitled to relief on the merits of his claim either. 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar."). It is well-established that due process prohibits the use of a coerced, involuntary confession to secure a defendant's conviction. *Dickerson v. United States*, 530 U.S. 428, 433 (2000) (noting that such evidence is "inherently untrustworthy"). Importantly, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Police interrogation tactics that do not rise to the level of coercion do not make a confession involuntary." *Thompson v. Runnels*, 705 F.3d 1089, 1097 (9th Cir. 2013).

Coercive police conduct may be the result of either physical intimidation or psychological pressure. *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960). The test for determining whether a confession is involuntary is "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession[,]" taking into consideration "'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Dickerson*, 530 U.S. at 434. "The characteristics of the accused can include the suspect's age, education, and intelligence, as well as a suspect's prior experience with law enforcement[.]" *Yarborough v. Alvarado*, 541 U.S. 652, 667-68 (2004) (citations omitted). The details of the interrogation include its length and location, and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). "Courts must 'weigh, rather than simply list,' the relevant circumstances, and weigh them not in the abstract but 'against the power of resistance of the person confessing.'" *United States v. Preston*, 751 F.3d 1008, 1017

(9th Cir. 2014) (en banc) (quoting *Doody v. Ryan*, 649 F.3d 986, 1015-16 (9th Cir. 2011) (en banc)); *see also Dickerson*, 530 U.S. at 434 ("The [voluntariness] determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" (citation omitted)).

Here, the state court determined that the Smith was not credible, and that his confessions were not induced by promises of leniency, after holding an evidentiary hearing in which Smith and numerous law enforcement officials testified. This Court must defer to the state court's finding that the new evidence was not credible unless Smith rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Smith fails to satisfy this heavy burden. "[N]o sort of factual finding[] is more appropriate for deferential treatment than . . . a state court's credibility determination." *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986). "'Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, Smith is not entitled to relief on this ground.

2. *Miranda Violation* (Ground 2)

Smith next contends that the trial court erred in admitting evidence that was obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), which provides that a suspect has a constitutional right not to speak to police after he is arrested and given certain warnings. In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Under this rubric, an interrogating officer must first advise the potential defendant that he or she has the right to consult with a lawyer, the

right to remain silent and that anything stated can be used in evidence against him or her prior to engaging in a custodial interrogation. *Id.* at 473-74. Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous statement invoking his constitutional rights, "all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

A defendant may waive his *Miranda* rights so long as the waiver is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A valid waiver of *Miranda* rights depends upon the totality of the circumstances. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Although some earlier Supreme Court cases had indicated the government had a "heavy burden" to show waiver, *Berghuis* explained that the burden is not too onerous. *Berghuis*, 560 U.S. at 384. Indeed, the waiver may be implied by conduct, and need not be explicit or written. *Id.* at 383.

> If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver" of *Miranda* rights. The prosecution must make the additional showing that the accused understood these rights. Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent. . . . As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.

*Berghuis*, 560 U.S. at 384-85 (citations omitted).

In considering Smith's *Miranda* claim on direct appeal, the Court of Appeals laid out the following factual basis:

-11-

Smith argues that in the August 29, 1997, interview, he made an equivocal request for counsel. His argument is based on the following exchange with Sergeant Kopp:

Kopp: Okay. You have the right to talk to a lawyer and have him present with you while you're being questioned, do you understand that?

Smith: Would you like me to have my lawyer here?

Kopp: That's ah, strictly your choice, I'm here to talk about Lori Hennigan: do you have something to be worried about as far as Lori [sic] goes?

Smith: No, no, absolutely . . .

Kopp: Okay. I, I just wanted you to know that if you felt, that you needed a lawyer with you while we're questioning you, you have that right available to you.

Smith: Right.

Kopp: Do you know you have that right?

Smith: Oh yeah.

Kopp: You, you know you have that right, okay. And if you could not afford to hire a lawyer, one would be appointed to represent you before any questioning.

Smith: Mm mm.

Kopp: If you wish, and you understand.

Smith: Mm mm.

Kopp: That's right, okay.

Smith: Mm mm.

Kopp: And you can decide, Billy, at any time to exercise these rights.

Smith: Okay.

Kopp: Not answer questions or make any statements, we're here only because . . .

Smith: Right.

Kopp: . . . we thought, you'd wanna talk about this and, and that's . . .

Smith: Well, no.

Kopp: . . . that's cool with us.

Smith: No I put a lot of . . .

Kopp: And ah . . .

-12-

> Smith: . . . thought in this.
>
> Kopp: Okay.
>
> Smith: I need to get into jail with, Rocky [Seaman], and I need to get him set up, get, get him set . . .
>
> Kopp: Mm mm.
>
> Smith: . . . set me up with the Dominicans, I don't know the Dominicans.
>
> Kopp: Okay.
>
> Smith: Well ah . . .
>
> Kopp: Tell me what, what um, it, it's okay with you to talk about this then, that's, it's not a problem?
>
> Smith: Yeah, doesn't matter to me.
>
> Specifically, Smith argues that he made an equivocal request for counsel when he responded to the *Miranda* warning with the question: "Would you like me to have my lawyer here?" However, in his ruling denying Smith's motion, Judge Link found that Smith's question "was not an invocation of his right to counsel, ambiguous or otherwise." Judge Link reasoned that Smith had approached the police about acting as a drug informant and offered to give information about the missing persons cases. As a consequence, Smith's "question was not a request for an attorney to be present during the interview," but rather "was a question directed to Sgt. Kopp to ascertain if he (Sgt.Kopp) wanted Smith to have an attorney present."

*Smith*, 2009 WL 792800, at *4-5.

The Court of Appeals concluded that Judge Link's finding "has a substantial basis in the text of Smith's inquiry and the circumstances of the interview." The record amply supports that the state appellate court properly considered the totality of the circumstances in determining whether Smith understood and voluntarily waived his *Miranda* rights. That conclusion was not an unreasonable determination of the facts in light of the record.

The Court of Appeals alternatively held that, "even assuming that Sergeant Kopp should have recognized Smith's question as an equivocal request for counsel, the record shows that Sergeant Kopp *did* recognize Smith's question as an equivocal request for counsel, and he immediately began to ask for clarification." *Smith*, 2009 WL 792800, at *5. "[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the

-13-

interviewing officers to clarify whether or not he actually wants" to invoke the privilege. *Davis v. United States*, 512 U.S. 452, 461 (1994). Indeed, clarifying questions "minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement." *Id.* However, the Supreme Court has expressly "decline[d] to adopt a rule requiring officers to ask clarifying questions." *Id.* at 461. Rather, "[i]f the suspect's statement is not an [] unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning." *Id.* at 461-62.

The record shows that, after Smith asked Sergeant Kopp, "Would you like me to have my lawyer here?", Kopp answered, "That's ah, strictly your choice, I'm here to talk about Lori Hennagin, do you have something to be worried about as far as Lori goes?" As the Court of Appeals explained, "Sergeant Kopp's response to Smith about Loreese Hennagin did not emphasize the difficulty of obtaining counsel, did not highlight the evidence against Smith, and did not attempted to convince Smith that things would be worse for him if he invoked his right to counsel." *Id.* at 6. Although, as the appellate court recognized, that initial statement might "conceivably have worked to discourage Smith from demanding the immediate presence of counsel," he "immediately corrected the mistake by repeatedly advising Smith about his right to counsel and ensuring that Smith understood." *Id.* at *7. The record reflects that Sergeant Kopp stated:

> I mean, it's your choice there. . . . I just wanted to know that if you felt, that you needed a lawyer with you while we're questioning you, you have that right available to you. . . . Do you know you have that right? . . . You, you know that you have that right, okay. And if you could not afford to hire a lawyer, one would be appointed to represent you before any questioning. . . . And you can decide, Billy, at any time to exercise these rights. . . . Not answer questions or make any statements, we're here only because . . . we thought, you'd wanna talk about this and, and that's . . . that's cool with us.

*Id.*

Given that the record supports that Sergeant Kopp asked for clarification, and that such clarification is not even strictly required under U.S. Supreme Court authority, this Court cannot find that the state court's determination that Smith's statements were not involuntary within the

-14-

meaning of the Due Process Clause contravenes or unreasonably applies federal law. *See Salinas v. Texas*, 570 U.S. 178, 186 (2013) ("We have before us no allegation that petitioner's failure to assert the privilege was involuntary, and it would have been a simple matter for him to say that he was not answering the officer's question on Fifth Amendment grounds."); *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011). Smith is therefore not entitled to habeas relief on this claim either.

### 3. *Ineffective Assistance of Trial Counsel* (Ground 3)

Finally, Smith claims that his trial counsel rendered ineffective assistance by failing to move for reconsideration after Judge Link denied his motion to suppress. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

-15-

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Smith must show that trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Smith argues, as he did in his post-conviction relief application, that during the evidentiary hearing on the suppression motion and again during Smith's trial, one of the troopers "admitted" that the investigating officers had accepted Smith's offer to work as an informant in exchange for leniency. But an independent review of the record supports the state courts' conclusion that no such admission was made. Accordingly, the Court of Appeals did not contravene or unreasonably apply Federal law when it concluded that the post-conviction relief application did not establish a prima facie case that any minimally competent attorney would have filed a motion for reconsideration or that such motion would have been successful. Smith is therefore not entitled to relief on this ground.

B.   Renewed Request for the Appointment of Counsel (Docket No. 13)

At Docket No. 13, Smith argues that he needs the assistance of appointed counsel to protect his rights. The Court notes, however, that it has access to and has reviewed his underlying case record, including the relevant transcripts of the trial and the evidentiary hearing on his petition for post-conviction relief, as well as his counseled direct appeal and counseled petition for post-conviction relief. Smith has now been represented by two attorneys in raising these claims. Smith fails to show that the interests of justice require this Court to appoint a third such attorney. Smith contends that he needs the assistance of counsel to obtain an order from

this Court requiring the state courts to obey its own state law, *Evans v. Evans*, 869 P.2d 478, 780 (Alaska 1994) (stating that all relevant evidence, including all conflicting testimony, must be considered in making credibility determinations). But as this Court has explained, even if the state court failed to consider all relevant evidence (which, as explained *supra*, is belied by the record), federal habeas relief is not available for errors of state law in any event. *Estelle*, 502 U.S. at 67-68. Accordingly, the Court will not reconsider its prior order at Docket No. 5 denying Smith's request for the appointment of counsel in these proceedings.

C.      Motion for Oral Hearing (Docket No. 12)

Smith also moves for an oral hearing on Respondent's motion for summary dismissal. Docket No. 12. The Court, however, has determined that oral argument is not necessary for adjudication of the Petition, and would not assist the Court. To the extent the motion may be construed as a request for an evidentiary hearing in this Court, the Court determines that such hearing is not warranted either. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state

hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded by statute as stated in Williams v. Taylor*, 529 U.S. 420 (2000).

As discussed above, Smith has failed to assert a colorable claim for relief. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2), he is not entitled to an evidentiary hearing in this Court.

## V. CONCLUSION AND ORDER

Smith is not entitled to relief on any ground raised in his Petition, and he is not entitled to the appointment of counsel or an oral hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for an Oral Hearing at Docket No. 12 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for the Appointment of Counsel at Docket No. 13 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

-18-

Case 3:20-cv-00033-JKS   Document 17   Filed 11/03/20   Page 18 of 19

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 3, 2020.

s/James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge